IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RALPH M. FLANNERY,** | : | **CIVIL NO. 1:CV-08-0685** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **MID PENN BANK, MID PENN BANCORP, INC., ALAN W. DAKEY, and ROBERT H. ROTH,** | : | |
| **Defendant** | : | |

## M E M O R A N D U M

Before the court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The case concerns a dispute arising out of a loan guaranty and subsequent default on the loan. Plaintiff's complaint alleges fourteen counts under federal and state law against Defendants, and Defendants seek to dismiss each count. As explained below, the court will grant Defendants' motion to dismiss.

## I.        Background

### A.        Facts[1]

Plaintiff filed this complaint alleging various federal and state law claims arising from a loan guaranty. In July 2004, four individuals formed Friendship Road Development Group, LLC ("FRDG"), a real estate development company that owns commercial property located at 421 Friendship Road, in Harrisburg, Pennsylvania. (Doc. 1 ¶¶ 9–10.) At the time of formation, FRDG had

---

[1] The facts are taken from the allegations in Plaintiff's complaint and are accepted as true for the purpose of Defendants' motion to dismiss.

four members who each had a 25% ownership interest: Donald C. Cappetta, David I. Bowser, Jeffrey Roth, and Collin Spencer. (*Id.* ¶ 11.) In February 2005, Plaintiff purchased member Roth's ownership interest and one-half of member Spencer's ownership interest, giving Plaintiff a 37.5% ownership interest in FRDG.[2] (*Id.* ¶¶ 12–13.) Member Bowser also served as president of Bowser Construction, Inc., the general contractor for construction work done at 421 Friendship Road. (*Id.* ¶ 14.)

In April of 2005, Mid Penn Bank extended a $500,000.00 loan to Harrisburg Fudd, LLC, a prospective tenant for the commercial space being developed at 421 Friendship Road. (*Id.* ¶ 15.) Mid Penn Bank extended the loan so that Harrisburg Fudd could pay Bowser Construction for construction of the space that FRDG would lease to Harrisburg Fudd. (*Id.* ¶ 16.) As collateral for the loan, Plaintiff, Plaintiff's wife, Bowser, Cappetta, and a separate company, Harrisburg Fudd I, LP, personally guaranteed the loan. (*Id.* ¶ 17.) Mid Penn Bank further required FRDG to secure the loan with a $500,000.00 mortgage for the property located at 421 Friendship Road. (*Id.* ¶ 22.) Member Cappetta procured the mortgage without authorization of the other FRDG members by using an Operating Agreement with falsified signatures that appeared to authorize Cappeta to execute the mortgage. (*Id.* ¶ 25.) Defendant Roth served as the loan officer representing Mid Penn Bank in agreement. (*Id.* ¶ 28.)

Mid Penn Bank administered the loan for nearly two years until Harrisburg Fudd defaulted on the loan in February 2007. (*Id.* ¶ 32.) After the default, a judgment by confession was entered against Harrisburg Fudd, Harrisburg

---

[2] Plaintiff's complaint alleges that after he purchased Roth's interest and one-half of Spencer's interest he had a 38.5% ownership and Spencer had a 12.5% ownership interest, a mathematical impossibility. The court regards this as a typographical error.

Fudd I, Bowser, Capetta, Plaintiff, and Plaintiff's wife. (*Id.* ¶ 32.)  In August 2007, Mid Penn Bank agreed to release Bowser as a personal guarantor and to sell its interest in the judgment to Bowser. (*Id.* ¶ 34.)  On August 23, 2007, Bowser formed Blac, Inc., and Blac, Inc. bought Mid Penn Bank's interest on September 13, 2007. (*Id.* ¶ 35.)  Plaintiff alleges, on information and belief, that Mid Penn Bank reached these agreements with Bowser and Blac, Inc. because Bowser had substantial business and personal investments with Mid Penn Bank as well as personal relationships with Defendants Roth and Dakey and other agents, employees, officers, and directors of Mid Penn Bank and Mid Penn Bancorp. (*Id.* ¶ 38.)  In December 2007, Bowser agreed to release Plaintiff from the judgment and all interest, attorney fees, and costs in exchange Plaintiff's interest in FRDG. (*Id.* ¶ 44.)

### B.  Procedural History

On April 11, 2008, Plaintiff filed the instant complaint against Defendants, alleging fourteen counts of federal and state law violations. (Doc. 1.) On June 23, 2008, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. (Doc. 9.)  After Plaintiff failed to respond to the motion to dismiss, the court deemed the motion unopposed and dismissed the case on July 24, 2008. (Doc. 24.)  On July 28, 2008, Plaintiff filed a motion for reconsideration and supporting brief, which informed the court that his counsel had suffered disfiguring burns and other horrible injuries and was comatose as the result of a automobile accident on July 4, 2008. (Doc. 13–14.)  The court granted the motion for reconsideration, reopened the case, and extended the time for Plaintiff to file a brief in opposition to Defendants' motion to dismiss. (Doc. 17.)  On October 29, 2008, Plaintiff, through

new counsel, filed a brief in opposition to Defendants' motion to dismiss.  (Doc. 24.)
Defendants filed a reply brief on November 11, 2008.  (Doc. 28.)  Accordingly, the
motion is ripe for disposition.

## II.       **Legal Standard**

Among other requirements, a sound complaint must set forth "a short
and plain statement of the claim showing that the pleader is entitled to relief."  Fed.
R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what
the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v.
Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355
U.S. 41, 47 (1957)).  "Fair notice" in Rule 8(a)(2) "depends on the type of
case—some complaints will require at least some factual allegations to make out a
showing that the pleader is entitled to relief."  *Phillips v. County of Allegheny*, 515
F.3d 224, 232 (3d Cir. 2008) (quotation omitted).  "A situation may arise where, at
some point, the factual detail in a complaint is so undeveloped that it does not
provide a defendant the type of notice of claim which is contemplated by Rule 8."
*Id.*  A plaintiff must provide "more than labels and conclusions" or "a formulaic
recitation of the elements of a cause of action" to show entitlement to relief.
*Twombly*, 127 S. Ct. at 1965; *accord Phillips*, 515 F.3d at 238–39; *Baraka v.
McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept
unsupported conclusions and unwarranted inferences or a legal conclusion couched
as a factual allegation." (quotations and citations omitted)); *Evancho v. Fisher*, 423
F.3d 347, 350 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action.  *Twombly*, 127 S. Ct. at 1965.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Id.*  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

5

2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.**          **Discussion**

          Plaintiff alleges fourteen separate counts of federal and state law claims, which all seem fundamentally based on the theory that Defendants colluded with Bowser to defraud Plaintiff out of his interest in FRDG.  Defendants argue either the *Rooker-Feldman* doctrine or doctrine of *res judicata* bar all of Plaintiff's claims or that, in the alternative, Plaintiff has failed to adequately allege any claims against Defendants.

          **A.**          **Fraud Claims Barred by the *Rooker-Feldman* Doctrine**

          Defendants argue that the *Rooker-Feldman* doctrine bars all of Plaintiff's claims because a confession of judgment was entered against Plaintiff in state court.  The court finds that the *Rooker-Feldman* doctrine strips this court of jurisdiction over Plaintiff's fraudulent inducement and fraud and deceit claims.

1.   **Legal Standard: *Rooker-Feldman***

The *Rooker-Feldman* doctrine[3] provides that "lower federal courts may

not sit in direct review of the decisions of a state tribunal." *Gulla v. North Strabane*

*Twp.*, 146 F.3d 168, 171 (3d Cir. 1998).  The doctrine "is confined to cases brought

by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005).  Because jurisdiction to review a state court's

decision rests solely in the United States Supreme Court, *see* 28 U.S.C. § 1257,

federal district courts lack subject matter jurisdiction over challenges that are the

functional equivalent of an appeal of a state court judgment, *Marran v. Marran*, 376

F.3d 143, 149 (3d Cir. 2004), "even if those challenges allege that the state court's

action was unconstitutional," *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486

(1983).  "Although § 1257 refers to orders and decrees of the highest state court, the

*Rooker-Feldman* doctrine has been applied to final decisions of lower state courts."

*In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005).

Specifically, a claim is the functional equivalent of an appeal if: (1)

"the federal claim was actually litigated in state court prior to the filing of the

federal action" or (2) "if the federal claim is inextricably intertwined with the state

adjudication, meaning that federal relief can only be predicated upon a conviction

that the state court was wrong." *Id.*  A federal claim is inextricably intertwined with

a state adjudication when the federal court must determine that the state court

---

[3]   The *Rooker-Feldman* doctrine derives from two Supreme Court decisions:  *Rooker v.*
*Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Circuit Court of Appeals v. Feldman*, 460 U.S. 462
(1983).

judgment was erroneously entered in order to grant the requested relief, or the federal court must take action that would negate the state court's judgment. *In re Knapper*, 407 F.3d at 581.

Before turning to the issue whether a state court "actually litigated" Plaintiff's claim or whether the claims are "inextricably intertwined" with the state adjudication, the court will review the scope of the prior litigation in the court of common pleas.  To better understand the scope of the prior litigation, the court will briefly discuss the Pennsylvania practice of confessions of judgment and petitions to open.

## 2.   Confessions of Judgment

A confession of judgment clause in a contract "permits the creditor or its attorney simply to apply to the court for judgment against the debtor in default without requiring or permitting the debtor or guarantors to respond at that juncture." *Sw. Pa. Reg'l Council, Inc. v. Gentile*, 776 A.2d 276, 279 n.3 (Pa. Super. Ct. 2001) (quoting *Silverman v. Eastrich Multiple Investor Fund*, L.P., 51 F.3d 28, 31 (3d Cir. 1995)).  Nonetheless, after a confession of judgment, the defendant may petition to open or strike the judgment.  *See* Pa. R. Civ. P. No. 2959.  "When there is a proceeding to open the judgment . . . the litigation becomes an adversary proceeding in which there is an adjudication upon the merits of the defenses raised." *Riverside Mem'l Mausoleum, Inc. v. Umet Trust*, 581 F.2d 62, 67 (3d Cir. 1978).  In the absence of a petition to open or strike the confessed judgment, the procedure by which judgment is confessed in Pennsylvania state courts lacks the hallmarks of an adversary proceeding.  *See Riverside Mem'l Mausoleum*, 581 F.2d at 67 *quoted in Newton v. First Union Nat'l Bank*, 316 F. Supp. 2d 225, 235 (E.D. Pa. 2004).

### 3.   **Application of *Rooker-Feldman***

_____Because Plaintiff did not file a petition to open or strike the confession of judgment, the issue before the court is whether the claims presented to this court are "inextricably intertwined" with the state court adjudication.  For purposes of *Rooker-Feldman* analysis, "[a] plaintiff's claim for relief in a federal action is 'inextricably intertwined' with an issue adjudicated by a state court under two circumstances: (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered . . . [or] (2) when the federal court must . . . take action that would render the state court's judgment ineffectual."[4]  *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 421 (3d Cir. 2003) (internal quotation marks and brackets omitted).  In either situation, a federal court lacks jurisdiction over the plaintiff's claim.  *Id.* at 421–422.

Here, Defendants suggest that the facts before the court represent  the quintessential example of the first circumstance.  With regard to Plaintiff's fraudulent inducement and fraud and deceit claims, the court agrees.  No dispute exists that a confessed judgment was entered against Plaintiff, which necessarily implies that the guaranty was adjudicated valid and enforceable and not otherwise the result of unlawful or fraudulent conduct.  *Zhang v. Haven-Scott Assocs., Inc.*, No. CIV.A. 95-2126, WL 1996 355344, at *8 (E.D. Pa. June 21, 1996) (citing *Riverside Mem'l Mausoleum*, 581 F.2d at 66–68); *see also Newton*, 316 F. Supp. 2d at 235 ("Essential to the state court's determination that [plaintiff] was in default of

---

[4] Although the passage in *Desi's Pizza* uses the correlative conjunction "and," courts treat "and' as a logical disjunction.  *See, e.g.*, *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 211 n.11 (3d Cir. 2004).

an enforceable note, and inextricably intertwined with it, was a determination that the Bank's demand for repayment was lawful."). For the court to find that Defendants procured the guaranty by fraud would necessarily imply that the state court erroneously entered the confession of judgment. Therefore, the court lacks jurisdiction over these claims.

## B.   Good Faith and Fair Dealing

Plaintiff alleges that Defendants breached a duty of good faith and fair dealing by "secretly selling their interest to David I. Bowser, one of the co-guarantors" in September 2007. Under Pennsylvania law, "[e]very contract . . . imposes a duty of good faith and fair dealing in its performance and its enforcement." *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000). While "[c]ourts have utilized the good faith duty as an interpretative tool to determine the parties' justifiable expectations in the context of a breach of contract action," the duty is "not divorced from the specific clauses of the contract and cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (citing *Duquesne Light Co. v. Westinghouse Leasing, Inc.*, 66 F.3d 604, 617–18 (3d Cir. 1995); *USX Corp. v. Prime Leasing, Inc.*, 988 F.2d 433, 438 (3d Cir. 1993)); *accord John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 706 (Pa. Super. Ct. 2003) ("The duty of good faith and the doctrine of implication apply in limited circumstances. Implied duties cannot trump express provisions in the contract."). In other words, "[u]nequivocal contractual terms hold a position superior to any implied by the courts." *John B. Conomos, Inc.*, 831 A.2d at 706.

Considering the limited nature of the doctrine of the implied duty of good faith and fair dealing, Plaintiff has failed to allege a claim against Defendants. The promissory note signed by Plaintiff guaranteeing the loan to Harrisburg Fudd includes the following express provision:

> All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or *release any party or guarantor or collateral*; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take *any other action deemed necessary by Lender without the consent of or notice to anyone*.

(Doc. 25-2 at 13) (emphasis added).  Plaintiff merely alleges that Defendants engaged in a course of conduct specifically permitted in the contract and obviously contemplated by the parties prior to forming the agreement.  Plaintiff cannot now allege that Defendants breached an implied duty by exercising their rights under the contract.  Accordingly, the court will dismiss Plaintiff's claim that Defendants breached an implied duty of good faith and fair dealing.

## C.   Claims Under RICO

Plaintiff's complaint alleges three separate civil RICO claims against Defendants: violations of 18 U.S.C. §§ 1962(a), 1962(c), and 1962(d).  18 U.S.C. § 1962 provides in relevant part:

> (a) It shall be unlawful for any person who received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such invoke, in acquisition of any interest in, or establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct

11

> or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(a), (c), and (d).

To allege a RICO violation under the above statutes, a plaintiff must, as a predicate, set forth allegations of acts of racketeering.  18 U.S.C. § 1961; *see also Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985).  Where a plaintiff alleges fraudulent acts, such as mail fraud or wire fraud, as the predicate acts, the plaintiff cannot rest on mere conclusory allegations and must state the circumstances constituting fraud with "particularity."  Fed. R. Civ. P. 9(b); *see also Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004); *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).  The plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

Plaintiff has failed to satisfy this heightened pleading standard, because his complaint merely recites the elements of a RICO claim without any specificity regarding the alleged predicate acts of mail fraud and wire fraud.  Plaintiff alleges that Mid Penn Bank "secretly colluded" with Bowser, "in part, because Mr. Bowser had substantial business and personal investments with Mid Penn Bank as well as personal relationships with Defendants Robert H. Roth and Allen [sic] W. Dakey." (Doc. 1 ¶ 33, 38.)  As part of this alleged conspiracy, Plaintiff asserts that

12

Defendants "repeatedly caused letters, mailgrams, and other matters and things to be delivered by United States Postal Service" and "repeatedly caused to be made and made [] telephone calls and other uses of interstate wire facilities." (*Id.* ¶¶ 85, 87; *see generally id.* ¶¶ 85–90.)  The court has carefully perused Plaintiff's complaint, yet finds the allegations quoted above provide the only "detail" and "specificity" regarding the alleged mail and wire fraud committed by Defendants.  The court finds that Plaintiff has failed to satisfy the pleading standard set forth in Rule 9(b), and, thus, will grant Defendants motion to dismiss Plaintiff's RICO claims.  *See Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC*, 207 Fed. App'x 185, 189 (3d Cir. 2006) (affirming dismissal of RICO claim predicated on mail fraud and wire fraud where plaintiff merely alleged "general allegations")*.*

### D.    Negligence and Vicarious Liability Claims

Defendants argue that the court must dismiss Plaintiff's negligence, vicarious liability, and negligent supervision claims because Plaintiff has alleged purely economic loss.  Indeed, under Pennsylvania law, a Plaintiff alleging negligence may not recover economic losses absent physical injury or property damage.  *Spivack v. Berks Ridge Corp.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990) (finding no claim for negligent construction and design of building where no personal injury or property damage alleged); *Aikens v. Balt. & Ohio R.R. Co.*, 501 A.2d 277, 279 (Pa. Super. Ct. 1985) (affirming judgment on pleadings because "no cause of action exists for negligence which results in only economic loss"); *accord Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) ("The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.") (internal quotation marks omitted).  "The

13

rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1271 (M.D. Pa. 1990).

Notwithstanding the economic loss doctrine, Plaintiff argues that the court should not dismiss his negligence claims because he "seeks damages for *both* the economic losses and the emotional damage caused by the events." (Doc. 24 at 13) (emphasis in original). The court does not find this argument persuasive. Pennsylvania courts have reasoned that:

> allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action . . . . To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system.

*Aikens*, 501 A.2d at 279. By allowing Plaintiff's complaint to survive a motion to dismiss because of boiler plate allegations of "emotional injuries" the court would seriously undermine the rationale underlying the economic loss doctrine.[5] *See Wood*

---

[5] Notwithstanding the court's ruling on the issue and Plaintiff's failure to cite to any authority, a recent unpublished opinion seems to suggest that allegations of emotional damages without physical injury or property damage provide a sufficient basis for alleging a negligence claim. *Day v. Hilton Scranton Hotel & Conference Ctr.*, No. 3:08-CV-0288, 2008 WL 4425283, at *5 (M.D. Pa. Sept. 24, 2008). The *Day* court supported its finding by citing the following passage:

> That a plaintiff may not sue in tort for economic losses arising from a breach of contract . . . does not preclude the possibility of a tort action between parties to a contract . . . [W]here the elements of a tort can be pled in good faith, a plaintiff is not precluded from asserting [a tort claim] against a defendant whose conduct may also constitute a breach of contract between the parties.

(continued...)

& *Locker, Inc. v. Doran Assocs.*, 708 F. Supp 684, 689 (W.D. Pa. 1989) ("In general, Pennsylvania courts have been reluctant to permit tort recovery for contractual breaches."). Thus, the court finds that Plaintiff's mere boiler plate allegation of "emotional injuries" resulting from Defendants allegedly unreasonably exercising their rights under the contract does not support a claim for negligence. *See Palco Linings*, 755 F. Supp. at 1271 ("[T]o recover in negligence there must be a showing of harm above and beyond disappointed expectations evolving solely from a prior agreement.") (internal quotation marks omitted). Accordingly, the court will dismiss Plaintiff's negligence, vicarious liability,[6] and negligent supervision claims.

---

[5](...continued)

*Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 951 (E.D. Pa. 1998). The actual quote from *Valley Forge* concerns "intentional interference with prospective business relationships" and states:

> In short, where the elements of the tort can be pled in good faith, a plaintiff is not precluded from asserting a claim for *intentional interference with prospective business relationships* against a defendant whose conduct may also constitute a breach of contract between the parties.

*Id.* (emphasis added).

 Pointing out this discrepancy is more than an academic exercise. The actual purpose of the passage was to clarify the nature of an intentional interference with prospective business relations claim and not to constrict the economic loss doctrine. In the paragraphs that precede the passage, the court in *Valley Forge* set forth an expansive view of the economic loss doctrine; it did not restrict it. The court in *Valley Forge* read the economic loss doctrine broadly as "preclud[ing] recovery in tort for economic losses arising from breach of contract" and explained that "economic losses" include "loss of reputation and good will." In other words, the court in *Day* misquoted and misapplied the reasoning in *Valley Forge*. Thus, the court finds this unpublished opinion unpersuasive and will decline to follow it.

 [6] Plaintiff's complaint alleges two grounds for vicarious liability. Neither ground can survive a motion to dismiss. First, Plaintiff has failed to set forth a negligence claim for the reasons explained, and, thus, there is no grounds on which Defendants Mid Penn Bank and Mid Penn Bancorp could be vicariously liable. Second, Plaintiff fails to state in his complaint what alleged intentional tort creates vicarious liability. Plaintiff's characterization of Roth's conduct as "tortious" and Dakey's conduct as "negligent" does not place Defendants on notice as to the nature of the claim.

### E.  Interference with Business Advantage, Prospective Business Advantage, and Contractual Relationship

Plaintiff alleges three separate interference based torts: (1) interference with business advantage, (2) interference with prospective advantage, and (3) intentional interference with contractual relations.  The Commonwealth of Pennsylvania recognizes two interference based claims.  First, Pennsylvania has adopted the Restatement (Second) approach to interference with advantageous economic relations or with performance of a contract.  *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 470–471 (Pa. 1979); *accord U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924–25 (1990).  Second, Pennsylvania recognizes a cause of action for interference with prospective contractual relations.  *Thompson Coal*, 412 A.2d at 416–17.  The names of these two bases of liability vary across jurisdiction, but ultimately represent a tort based on interference with existing relations and a tort based on interference with prospective relations.  44B Am. Jur. 2d *Interference* § 1 (2008) (noting that jurisdictions use several names for interference based claims including, interference with contract, interference with business relationships, interference with prospective economic advantage, interference with advantageous relations, and interference with contract negotiations); *see also* 1 Summ. Pa. Jur. 2d Torts § 4:3 (2008).  The court will review each of the two claims separately.

### 1.  Intentional Interference with Prospective Contractual Relationship

Pennsylvania recognizes a claim for intentional interference with prospective contractual relations where a plaintiff alleges (a) a prospective contractual relation, (b) the purpose or intent to harm the plaintiff by preventing the

relation from occurring, (c) the absence of privilege or justification on the part of the defendant, and (d) the occasioning of actual damage resulting from the defendant's conduct. *Thompson Coal*, 412 A.2d at 471. Courts define a prospective contractual relation as "something less than a contractual right, something more than a mere hope," which exists if there is "reasonable probability that a contract will arise from the parties' current dealings." *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir. 1994) (citing *Glenn v. Point Park Coll.*, 272 A.2d 895, 898–99 (Pa. 1971)).

Plaintiff fails to state a claim for intentional interference with a prospective contractual relationship because he fails to allege a reasonable probability that he would have entered into a contractual relationship with a third party. Rather, he merely alleges that he had "the valid and reasonable expectation that he would derive future economic benefits" from his membership interest in FRDG. This allegation does not state a claim on which relief could be granted.

## 2.   Intentional Interference with Contractual Relations

Likewise, Plaintiff has failed to state a claim for intentional interference with contractual relations. Pennsylvania permits tort claims against "one who, without privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another or (b) enter into or continue a business relation with another . . . ." *U.S. Healthcare*, 898 F.2d at 924–25. The Pennsylvania Supreme Court has adopted the test set forth in the Restatement (Second) of Torts:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary

17

> loss resulting to the other from the third person's failure to perform the contract.

*Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1183 (Pa. 1978).

Plaintiff fails to allege a threshold requirement. Plaintiff suggests that Defendants interfered with his relationship with FRDG, a limited liability company in which he owned an interest. Yet Plaintiff does not allege that Defendants engaged in any conduct that induced FRDG to discontinue its relationship with him. Rather, he alleges that Defendants sold interest in a judgment to Bowser as part of a conspiracy to cause Bowser to unlawfully acquire his interest in FRDG. In other words, Defendants acts caused Plaintiff *to transfer his ownership interest in FRDG* as part of a settlement. They did not cause FRDG to do anything. FRDG remained passive. Accordingly, Plaintiff has failed to allege tortious interference with a contractual or business relationship.

## F.   Civil Conspiracy

Defendants argue that Plaintiff has failed to plead adequately a civil conspiracy claim. To state a civil action for conspiracy a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Moreover, a plaintiff alleging a civil conspiracy must allege an underlying tort. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405 (3d Cir. 2000). Courts will dismiss a claim of civil conspiracy when it is predicated on a separate tort based claim that the court finds defective. *See, e.g., McGreevy v. Stroup*, 413

F.3d 359, 371 (3d Cir. 2005) (affirming dismissal of civil conspiracy claim based on defamation where plaintiff failed to plead defamation); *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789–90 (3d Cir. 1999).  As discussed above, Plaintiff has alleged a series of defective tort claims that cannot withstand a motion to dismiss.  Therefore, Plaintiff's civil conspiracy claim must also fail.

**IV.**      **Conclusion**

In accordance with the foregoing discussion, the court will grant Defendants' motion to dismiss.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  December 3, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RALPH M. FLANNERY,** | : | **CIVIL NO. 1:CV-08-0685** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **MID PENN BANK, MID PENN BANCORP, INC., ALAN W. DAKEY, and ROBERT H. ROTH,** | : | |
| **Defendant** | : | |

## O R D E R

In accordance with the foregoing discussion, **IT IS HEREBY ORDERED THAT**:

1) Defendants' motion to dismiss (Doc. 9) is **GRANTED**.

2) The Clerk of Court is ordered to close the case.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  December 3, 2008.